## COOPER INS. CO. v. HAWKINS.

### (Circuit Court of Appeals, Seventh Circuit. January 6, 1896.)

### No. 230.

CORPORATIONS—ULTRA VIRES—LAWFUL ACT FOR UNLAWFUL PURPOSE.

The decision in Bank v. Hawkins, 71 Fed. 369, followed and applied to the case of an insurance company, authorized to hold stock of a national bank as an investment of surplus, but not of capital, which had invested a part of its capital in such stock.

In Error to the Circuit Court of the United States for the District of Indiana.

The Indianapolis National Bank, a banking association organized under the laws of the United States and carrying on the business of banking at the city of Indianapolis, closed its doors on the 24th day of July, 1893, and suspended its business, being then largely insolvent. On the 3d day of August, 1894, Edward Hawkins, the defendant in error, was by the comptroller of the currency of the United States appointed receiver of the banking association. The assets of the bank being insufficient to pay its indebtedness, the comptroller of the currency of the United States, on the 25th of October, 1893, made an assessment upon all the shares of capital stock of such banking association, being 3,000 shares of $100 each, of 100 per cent. on the par value of such stock, payable on the 25th day of November, 1893. The plaintiff in error, the Cooper Insurance Company, a corporation under the laws of Ohio, and having its principal office at the city of Dayton, in that state, was at the time of the suspension of the bank and at all times thereafter the owner of 120 shares of the capital stock of such bank; and, having failed upon due notice and demand to meet the assessment made, suit was brought by the receiver in the court below to recover the amount of the assessment. To that suit the defendant answered, inter alia, as follows:

"The defendant says that it is a corporation organized under the laws of Ohio and doing business in that state, having its principal office in the city of Dayton, in the state of Ohio. That the statute of Ohio in force during the time mentioned in this paragraph, with reference to the powers of corporations under the class of the defendant, and with reference to any investment made by such companies, was and is as follows, to wit:

"'Sec. 3637. No company organized under this chapter, or incorporated under any laws of this state, for the purposes provided in section thirty-six hundred and thirty-two, shall invest its capital, or any part thereof, otherwise than in 1, United States bonds; 2, Ohio state bonds; 3, bonds of a county, township, or municipal corporation in this state, issued in conformity with law; 4, bonds and mortgages on unincumbered real estate within the state worth fifty per cent. more than the sum loaned thereon, exclusive of buildings; 5, the stock of any national bank located in this state, organized under the provisions of an act of congress entitled "An act to provide a national currency, secured by the pledge of United States stocks, and to provide for the circulation and redemption thereof," approved February 25, 1863, and acts amendatory thereof and supplementary thereto; or 6, first mortgage bonds of railroads within this state upon which default in the payment of the interest coupons has not been made within three years previous to the purchase thereof. [70 v. 147, § 6.]

"'Sec. 3638. Funds accumulated in the course of business, or surplus money over and above the capital stock of a company, may be loaned on or invested in the above named securities, or, 1, bonds and mortgages on unincumbered real estate within this state, worth fifty per cent. more than the sum loaned thereon, exclusive of buildings, unless such buildings are insured in some company authorized to do business in this state, and the policy is transferred to a company making the investment; 2, bonds of any state of the United States; 3, stocks, bonds, or other evidences of indebtedness of any solvent, dividend paying institution incorporated under the laws

of this or any other state, or of the United States; except its own stock; or 4, negotiable promissory notes maturing in not more than six months from the date thereof, secured by collateral security through the transfer of any of the classes of securities above described in this or the preceding section, with absolute power of sale within twenty days after default in payment at maturity.' [70 v. 147, § 6.]

"And the defendant says it is not liable herein, for that it did not become the owner or holder of the shares of stock in the Indianapolis National Bank described in the declaration either as a pledge or upon execution, or any compromise or settlement of a doubtful or bad debt, but, on the other hand, in the manner following, and not otherwise; that is to say: On the 6th day of March, 1890, the defendant attempted to become the owner of fifty (50) shares of said stock by then and there purchasing the same from Henry Rauh, then the owner thereof, at a price then agreed upon and paid. That in like manner, on the 6th day of September, 1890, the defendant attempted to become the owner of twenty (20) shares of said stock by purchase from E. Rauh & Sons, who were then the owners thereof, and the payment of the price agreed upon for the same. And on the 25th day of March, 1891, the defendant likewise attempted to become the owner of fifty (50) shares of said stock by purchase from H. A. Wyman, who was then the owner thereof, and the payment of the price stipulated therefor. Each and all of which payments were made out of the defendant's general fund, and not out of its surplus fund. And the defendant so attempted to purchase and hold each of the said shares as a permanent investment. Pursuant to said arrangement, and with full knowledge thereof, the president of the Indianapolis National Bank caused the said shares to be transferred to this defendant on the books of the Indianapolis National Bank, in whose name the same have ever since stood. And this defendant says that it is not liable herein, for that, under the act of congress governing national banks, the said Haughey, as president of the Indianapolis National Bank, had no power to issue any of the shares thereof to a corporation, nor to this defendant; nor had said Haughey, who was then the president, any power, as such president, under said act of congress or otherwise, to transfer or cause to be transferred the said shares or either of them upon the books of said bank to this defendant; nor had this defendant any power, under the act of congress or the laws of Ohio above mentioned, to become the owner, by purchase or otherwise, of said shares in said national bank."

To this portion of the answer a demurrer was interposed that the facts stated did not suffice to constitute a defense. This demurrer was sustained by the court. Afterwards, on the 13th of December, 1894, the insurance company withdrew its answer of general denial, declined to answer further, and elected to abide by the ruling of the court upon the demurrer; whereupon, the cause being submitted, the court rendered judgment against the insurance company for the amount of the assessment; to review which judgment this writ of error is sued out.

Addison C. Harris and Geo. Shirts, for plaintiff in error.
Frank B. Burke and John W. Kern, for defendant in error.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

JENKINS, Circuit Judge, after statement of the facts, delivered the opinion of the court.

This cause is ruled by the judgment in Bank v. Hawkins (herewith decided) 71 Fed. 369. There is no distinction observable in the facts of the case, and the judgment must be affirmed.